UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QUALITY LEASE AND RENTAL
HOLDINGS, LLC,
a Delaware limited liability company,

    Plaintiff,

v.                                      Case No.

DAVID MICHAEL MOBLEY,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Quality Lease and Rental Holdings, LLC ("QLRH") sues Defendant, David Michael Mobley ("Mobley") and states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because QLRH is a citizen of Delaware and Florida, and Mobley is a citizen of Texas. Further, the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. This Court has personal jurisdiction over Mobley because the Employment Agreement on which this suit is based was negotiated by Mobley in Florida. Moreover, in the Employment Agreement, Mobley specifically consented to the existence of jurisdiction in this Court. Finally, as President of QLRH, Mobley would have been expected, as part of his employment responsibilities, to participate in QLRH board meetings in Florida.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and because the contract at issue selects this Court as the proper venue for any disputes arising therefrom.

## FACTUAL BACKGROUND

4. QLRH is a Delaware limited liability company with its principal place of business in Tampa, Florida. QLRH, through its wholly-owned subsidiaries, Quality Lease Service, LLC ("QLS") and Quality Lease Rental Service, LLC ("QLRS"), provides wellsite support services, wellsite production services, and wellsite construction services to the oilfield industry, including providing rental equipment, rig housing and accommodations, water and sewer systems, and power supply to its customers.

5. Mobley is an individual who is a citizen of Texas, and is domiciled in El Campo, Texas. Mobley is the President of QLRH.

6. In late 2012, QLRH acquired QLS and QLRS which were then indirectly owned by Mobley and his former wife, Yvette Mobley. In connection with the purchase, Mobley, through an affiliate entity, became a minority member of QLRH and entered into an Employment Agreement with QLRH dated December 31, 2012, which named him President of QLRH and defined his role and responsibilities to QLRH (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as **Exhibit A.**

7. Mobley acknowledged in Section 1.2 (a) of the Employment Agreement that "he owes a strict duty of loyalty to [QLRH] . . . ."

8. Mobley also agreed to devote his full business time and effort to the performance of the Employment Agreement and to his duties as President, and agreed to "use his best efforts to advance the business and welfare of [QLRH]." Employment Agreement, Section 1.2 (c).

9. In connection with QLRH's purchase of QLS and QLRS, Mobley represented that these two companies brought in eight-figure earnings and revenue. Based on these representations, QLRH purchased QLS and QLRS for a multiple of said revenue and earnings.

10. Mobley also represented that QLS and QLRS, the entities purchased by QLRH, provided the vast majority of the above-described wellsite services to customers, such as rental equipment, rig housing, water and sewer systems, and power supply, among others.

11. Mobley is involved in several other wellsite service companies that were not purchased by QLRH, including QCE Supply, Inc., Texas Quality Gate Guards, LLC and Texas Quality Mats, LLC, (the "Mobley Affiliates"). Based on Mobley's representations that QLS and QLRS provided substantially all of the revenue-generating wellsite services, QLRH agreed to allow Mobley to continue to manage and operate the Mobley Affiliates after the purchase, with some conditions.

12. Specifically, Section 1.2 (c) of the Employment Agreement provides that Mobley may continue to manage and operate the Mobley Affiliates in the same manner said entities were operated as of December 31, 2012, provided that "such management

and operation do not materially interfere with [Mobley's] fulfillment of his obligations and duties under this Agreement."

13. Moreover, by signing the Employment Agreement, Mobley agreed that he "shall not and shall not permit the Mobley Affiliates to expand or increase such operations in any manner that would have an adverse effect on the Business of [QLRH] without the written consent of [QLRH]." Employment Agreement, Section 2.2.

14. Since the date of the purchase, QLRH's revenues and earnings have been significantly lower than the numbers Mobley provided pre-sale, and have continued to decline each month in 2013.

15. Upon information and belief, Mobley has diverted a significant amount of QLRH business to the Mobley Affiliates in violation of the terms of his Employment Agreement and in breach of the fiduciary duty Mobley owes QLRH.

16. All conditions precedent to the institution and maintenance of this action have occurred, have been performed, or have been waived.

## COUNT I: BREACH OF CONTRACT

17. QLRH realleges the allegations of paragraphs 1 through 16 as though fully set forth herein.

18. This is a cause of action for breach of the Employment Agreement against Mobley.

19. Mobley breached the Employment Agreement by diverting a significant amount of QLRH business to the Mobley Affiliates, by violating his duty of loyalty to

QLRH, and by failing to use his best efforts to advance the business and welfare of QLRH.

20. Specifically, upon information and belief, Mobley is running revenue through the Mobley Affiliates rather than attributing said revenue to QLRH through QLS and QLRS. In addition, Mobley is improperly charging QLRH for services of the Mobley Affiliates that were not previously charged to QLS and QLRS, and has caused the Mobley Affiliates to expand their operations so as to interfere with the business of QLRH.

21. Moreover, Mobley has allowed his management and operation of the Mobley Affiliates to interfere with the fulfillment of his obligations and duties under the Employment Agreement.

22. Mobley's actions constitute a breach of the Employment Agreement.

23. As a result of Mobley's breaches as alleged herein, QLRH has been damaged.

WHEREFORE, QLRH respectfully requests that this Court enter judgment against Mobley, together with all damages, costs, prejudgment interest, and attorneys' fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT II: BREACH OF FIDUCIARY DUTY

24. QLRH realleges the allegations of paragraphs 1 through 16 as though fully set forth herein.

25. This is a cause of action for breach of fiduciary duty against Mobley.

26. Mobley owes QLRH a fiduciary duty by reason of his position as President, and because he controls a minority interest in QLRH.

27. Mobley breached his fiduciary duty by diverting a significant amount of QLRH business to the Mobley Affiliates, by usurping QLRH corporate opportunities for the benefit of the Mobley Affiliates, and by failing to perform his responsibilities and duties for the benefit of QLRH.

28. As a result of Mobley's breaches as alleged herein, QLRH has been damaged.

WHEREFORE, QLRH respectfully requests that this Court enter judgment against Mobley, together with all damages, costs, prejudgment interest, and attorneys' fees, and for such other and further relief as this Court deems appropriate and just.

## COUNT III: FRAUD

29. QLRH realleges the allegations of paragraphs 1 through 16 as though fully set forth herein.

30. This is an action for fraud against Mobley.

31. Mobley has knowingly made a number of false statements to QLRH concerning material facts.

32. Specifically, Mobley represented that the revenue and earnings of the QLRH-purchased entities were in the mid eight figures, and that QLS and QLRS performed the majority of the revenue-generating wellsite services.

33. In fact, the Mobley Affiliates, which are managed and operated by Mobley, are performing a substantial amount of wellsite services and earn significant revenue therefrom, to the detriment of QLRH.

34. Mobley knowingly and intentionally misrepresented the revenue and earnings of QLS and QLRS, as well as the relationship between the Mobley Affiliates and the provision of wellsite services.

35. Mobley knew that each of the above statements were false.

36. Mobley intended for his false statements and misrepresentations to induce QLRH to enter into the Employment Agreement, to induce QLRH to allow Mobley to continue to manage and operate the Mobley Affiliates even after he was named President of QLRH, and to take other action to its detriment.

37. QLRH relied on Mobley's false representations to its detriment.

38. As a direct and proximate result of Mobley's fraud, QLRH has been damaged.

WHEREFORE, QLRH respectfully requests that this Court enter judgment against Mobley, together with all damages, costs, prejudgment interest, and attorneys' fees, and for such other and further relief as this Court deems appropriate and just.

Dated: April 8, 2013.

_/s/ Stephanie Leuthauser_
CHARLES M. HARRIS (Fla. Bar #967459)
cmharris@trenam.com
STEPHANIE S. LEUTHAUSER (Fla. Bar #44981)
sleuthauser@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
 FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
(813) 223-7474 / (813) 229-6553 (facsimile)
Attorneys for Plaintiff