## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

QUALITY LEASE AND RENTAL     )
HOLDINGS, LLC, a Delaware limited    )
liability company,     )
     )
    Plaintiff,     )    Case No.    8:13-CV-00881-MSS-TBM
     )
v.     )
     )
DAVID MICHAEL MOBLEY,     )
     )
    Defendant.     )
_____/

## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

Defendant David Michael Mobley ("Mr. Mobley") responds to the Complaint filed against him by Plaintiff Quality Lease and Rental Holdings, LLC ("QLRH" or "Plaintiff"). Mr. Mobley seeks dismissal of that Complaint in its entirety under Fed. R. Civ. P. 12(b)(6), 9(b), and 9(c). In the alternative, Mr. Mobley requests that the Court treat this motion as one for summary judgment under Fed. R. Civ. P. 12(d), and that the Court, after considering "matters outside of the pleadings" as expressly anticipated by that Rule, issue a summary judgment in his favor.

## DOCUMENTS RELEVANT TO MR. MOBLEY'S MOTION

In addition to the December 31, 2012 Employment Agreement attached to QLRH's Complaint as Exhibit "A", Mr. Mobley provides along with this Motion the following materials for the Court's consideration:

**Exh.:**  **Document:**

1    "Purchase and Contribution Agreement", dated 12/31/12 between
    Mr. Mobley, et al. and QLRH ("the Purchase Agreement").

2 Letter from QLRH's counsel to Mr. Mobley, dated 4/6/12, placing Mr. Mobley on "paid administrative leave effective immediately" (the "Administrative Leave Letter").

3 "New Hire Announcements" from QLRH to all employees, falsely stating in its final paragraph that Mr. Mobley has "resigned" from QLRH, due to his "desire to retire."

4 "Litigation Hold Memorandum" from QLRH to all employees, dated 4/12/13, announcing the initiation of QLRH's litigation against Mr. Mobley.

## OVERVIEW OF MOTION

QLRH's Complaint (as stated in para. 2) is based on an Employment Agreement. That Employment Agreement was executed the same day as the Purchase Agreement, *See* Exh. 1. Under that Purchase Agreement, and as alleged in the Complaint at para. 6, Mr. Mobley (and others) sold QLRH two companies not named in this litigation, Quality Lease Service, LLC ("QLS"), and Quality Lease Rental Service, LLC ("QLRS").

Instead of suing Mr. Mobley (and others) over its dissatisfaction with the underlying transaction, QLRH is instead seeking a determination from this Court that would justify QLRH's desire to terminate Mr. Mobley "for cause" – despite the fact that QLRH has failed to follow the express notice and cure provisions contained in both the Employment Agreement and the Purchase Agreement.

QLRH's improper motive is exposed by its own documents. Specifically, shortly before QLRH filed this lawsuit, it informed Mr. Mobley that he is on indefinite "administrative leave" and it banned from his offices (and from any contact with employees or others) due to unspecified actions that QLRH stated "may constitute breaches of the Employment Agreement". *See* Exh. 2. Next, QLRH announced to all employees, quite inconsistently, that Mr. Mobley had "resigned" from QLRH due to his "desire to retire". In that announcement, QLRH even wished

Mr. Mobley "well and continued success." *See* Exh. 3.  Then, on 12, 2013, QLRH finally admitted to its employees that it had "initiated litigation" against Mr. Mobley. *See* Exh. 4.

By this lawsuit, QLRH is essentially seeking a declaratory judgment holding that these unspecified acts – for which no opportunity to cure has been provided – allegedly constitute a breach of Mr. Mobley's employment.  If QLRH were allowed to proceed, it would be able to avoid its own contractual conditions precedent to the filing of this case.

This improper litigation must be dismissed, or in the alternative, the Court should issue summary judgment against QLRH.  The Complaint is fatally defective because:

1. QLRH has failed to satisfy a written contractual condition precedent to bringing any claim based on the Employment Agreement.  Specifically, QLRH has failed to provide Mr. Mobley with the mandatory 30-day notice and "cure" period required by Employment Agreement Section 5.1.  Counts I (Breach of Contract) and II (Breach of Fiduciary Duty) must both be dismissed, as required by Fed. R. Civ. P. 9(c).

2. QLRH's Count III for "Fraud" must similarly be dismissed; QLRH has entirely failed to allege the "particularly" required under Fed. R. Civ. P. 9(b).  All of QLRH's allegations regarding financial misrepresentations occurred (if at all) before the December 31, 2012 Employment Agreement was executed.  Mr. Mobley makes no financial representations whatsoever in that document, and QLRH has not alleged that Mr. Mobley has misrepresentations afterwards.  In addition, QLRH has failed to precisely state the contents of any misstatements it believes were made; QLRH has failed to furnish the Court or Mr. Mobley with a single document supporting its fraud allegations; and QLRH has failed to specify exactly when any alleged misstatements were made, let alone, to whom.

3. Should the Court even reach QLRH's separate allegations that Mr. Mobley has unfairly diverted some QLRH business to the businesses defined in the Employment Agreement and the Purchase Agreement as "the Mobley Affiliates," the Court must rule in Mr. Mobley's favor on those matters as well.  Under both Sec. 1.1(c) of the Employment Agreement and Sec. 5.07(f) of the Purchase Agreement, QLRH agreed that Mr. Mobley could continue to operate and manage the Mobley Affiliates exactly as he did before the December 31, 2012 closing, which Mr. Mobley has done.  QLRH has made no allegation whatsoever that Mr. Mobley's post-December 31, 2012 conduct differed in any way from his pre-December 31, 2012 operation of the Mobley Affiliates.  The Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) as failing to state a cause of action.

4. If the Court treats this Motion as one for summary judgment instead of one seeking outright dismissal of all claims, the Court should issue summary judgment for Mr. Mobley under Fed. R. Civ. P. 12(d), under which the Court can consider relevant documents that QLRH did not present to the Court as part of its Complaint:  the December 31, 2012 Purchase Agreement (Exh. 1); and QLRH's own inconsistent pronouncements regarding Mr. Mobley's employment status (Exh. 2-3).

Summary judgment is appropriate for Mr. Mobley because under the Purchase Agreement (the vehicle by which QLRH acquired QLS and QLRS as referenced in para. 6 and elsewhere of the Complaint), i) QLRH received audited financial statements prior to the December 31, 2012 closing and no other undisclosed liabilities existed (Sec. 3.06-07);  ii) QLRH expressly agreed that Mr. Mobley would be permitted to continue to operate the Mobley Affiliates to the same extent he operated them before (sec. 5.07(f)); iii) QLRH promised that any direct claim against Mr. Mobley would be preceded by a 30-day written notice, measured from the date QLRH became aware of any claim (sec. 8.03-05; 10.02); and, iv) QLRH agreed the terms of that Purchase Agreement could not be modified except in writing (sec. 10.09), something that has not occurred.[1]

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

This lawsuit is really about QLRH's buyer's remorse over its December 31, 2012 acquisition of QLS and QLRS.  QLRS is now attempting to retrade this transaction, by casting this litigation as a (meritless) employment dispute.  However, QLRH's Complaint fails to present the Court with all of the relevant facts, including the express terms of its December 31, 2012 Purchase Agreement with Mr. Mobley.  That is hardly surprising, since the Purchase Agreement precludes this action.

The Complaint alleges that Mr. Mobley made false financial representations **prior to** December 31, 2012, the date the Purchase Agreement and the Employment Agreement were

---

[1] The Purchase Agreement states that it is to be governed by Florida law (Sec. 10.11), though the Employment Agreement states that it is to be governed by Texas law.

Page 4

both executed.[2] Those financial misrepresentation allegations should not be confused with any legitimate dispute arising out of Mr. Mobley's post-closing tenure as QLRH's President under the Employment Agreement. Mr. Mobley made no such representations in the Employment Agreement, and QLRH does not allege that Mr. Mobley made any improper financial representations *after* December 31, 2012. Any such allegation, even if made now, would be nonsensical: no post-December 31, 2012 misrepresentation could possibly have induced QLRH to enter into the December 31, 2012 Purchase Agreement and the accompanying Employment Agreement.

All that is left are QLRH's "unfair competition" allegations about Mr. Mobley's post-closing operation of the Mobley Affiliates. The Complaint ignores the fact that Mr. Mobley's continued operation of the Mobley Affiliates was expressly carved out of both the Purchase Agreement and the Employment Agreement. Even if QLRH's allegations about diverted business had any merit (but they do not), QLRH has failed to satisfy not just one, but two separate written conditions precedent.

First, Sec. 5.1 of the Employment Agreement mandates that QLRH provide a written 30-day notice and "right to cure" opportunity to Mr. Mobley, which was never done. Second, Sec. 8.05(c) of the Purchase Agreement mandates a 30-day written notice prior to bringing any direct claim, measured from the date the complaining party learns of the facts giving rise to the claim. QLRH never provided Mr. Mobley with this notice, either; QLRH is well outside that 30-day window. That failure is unexcused, and is also fatal to QLRH's suit.

---

[2] While both documents were executed on the same day, the Purchase Agreement, by virtue of pure logic, must have preceded the Employment Agreement; without the acquisition of QLS and QLRS, QLRH had no reason to employ Mr. Mobley.

Finally, as to its Count III for "Fraud," QLRH has failed to allege that false representations were made in the Employment Agreement or thereafter, and it has failed to specify the alleged "fraud" with particularity, as required by Fed. R. Civ. P. 9(b).

## Other Relevant Factual Background

QLRH was formed in late 2012 as a holding company to effectuate its December 31, 2012 commercial acquisition(s) of the entities memorialized in the December 31, 2012 Purchase Agreement, QLS and QLRS. Complaint, para. 4-5.[3] The preamble of the Purchase Agreement identifies a number of individuals and entities as "Sellers" and "Owners" for purposes of that deal, of which Mr. Mobley was only one.

Due to its acquisition on December 31, 2012 of QLS and QLRS, QLRH and Mr. Mobley entered into a written Employment Agreement, making Mr. Mobley the President of the holding company. Complaint, para. 6. The Purchase Agreement is inextricably intertwined with the circumstances leading up to and culminating in the December 31, 2012 Employment Agreement. All of QLRH's three counts -- 1) Breach of Contract; 2) Breach of Fiduciary Duty; and 3) Fraud -- are based upon the Employment Agreement (Complaint, para. 2.)

QLRH is attempting to make pre-closing negotiations the basis for a post-closing employment dispute. Instead of suing on the Purchase Agreement itself, QLRH is instead suing only Mr. Mobley, under his Employment Agreement, despite the fact that on the face of the Employment Agreement, Mr. Mobley makes absolutely no financial representations whatsoever to QLRH – either pre-closing, or post-closing. Complaint, para. 9; 14; 32.

---

[3] Mr. Mobley is a Texas resident; his primary duties under the Employment Agreement were to be performed in El Campo, Texas; and QLS and QLRS are both Texas limited liability companies. *See* Employment Agreement, para. 1.2(b); *see also*, Purchase Agreement, preamble. Despite the apparent lack of any nexus between Texas and this Court, QLRH's assertion of personal jurisdiction over Mr. Mobley rests on an assertion that the Employment Agreement upon which its suit is based "was negotiate3d by Mobley in Florida." Complaint, para. 2; *see also*, Employment Agreement, para. 6.6 (jurisdiction/venue clause).

QLRH's lawsuit against Mr. Mobley for alleged pre-closing financial misrepresentations does not name QLS, QLRS, or any of the various other "Sellers" or "Owners" defined in the Purchase Agreement.  In fact, QLRH's lawsuit against Mr. Mobley does not even inform the Court of the existence of the December 31, 2012 Purchase Agreement that led to Mr. Mobley's position as President.

QLRH's dissatisfaction with its acquisition of QLS and QLRS, less than four months after the transaction closed, has also led QLRH (without providing the required prior written notice to Mr. Mobley) to accuse Mr. Mobley of improperly competing with QLRH.  Complaint, para. 11-13; 15; 19-22; 26-28; 33-37.  Fatal to these allegations are express written "carve-outs" contained in the Employment Agreement and the Purchase Agreement, both of which guarantee Mr. Mobley's ability to continue to operate the Mobley Affiliates just as he did before the closing.  QLRH has not alleged that Mr. Mobley has been doing anything with the Mobley Affiliates post-closing that he did not also do prior to the closing; as a result, QLRH's trumped-up "unfair competition" allegations simply fail.

## LEGAL ARGUMENT

I.     **COUNTS I AND II MUST BE DISMISSED BECAUSE QLRH HAS FAILED TO SATISFY A MANDATORY CONTRACTUAL CONDITION PRECEDENT: NAMELY, IT IGNORED THE 30-DAY NOTICE AND CURE PERIOD REQUIRED BY SECTION 5.1 OF THE EMPLOYMENT AGREEMENT.**

QLRH has effectively terminated Mr. Mobley as its President, without notice, or an opportunity to cure.  First, QLRH informed Mr. Mobley that it "has become aware of certain activities and actions taken by [him] that may constitute breaches of the Employment Agreement" and that, following an investigation, QLRH would decide "what appropriate action needs to be taken." See Exh. 2.  That "action," apparently, was this lawsuit.  Second, QLRH obscured the truth from its employees, and falsely told them that Mr. Mobley had "resigned" and

"retired." *See* Exhibit 3.  Third, QLRH announced to all of its employees on April 12, 2013 that it had sued Mr. Mobley, *see* Exhibit 3, an action guaranteed to make it impossible to return to his job and gain their trust and confidence.  Fourth and finally, QLRH has made very serious allegations of in this Federal Court about Mr. Mobley's alleged breach of contract, breach of fiduciary duty, and fraud.  The Plaintiff seeks to use this action as the basis for terminating Mobley, without giving him notice and the right to cure the unspecified alleged problems. Mr. Mobley can be terminated for cause -- without giving him notice of specific wrongdoing or an opportunity to cure any breach, as required by the Employment Agreement and the Purchase Agreement.

The law in this jurisdiction is as follows:  a plaintiff seeking to enforce a contract must first show the Court that all contractual condition precedents have been satisfied.  *U.S. ex rel. Cemex Const. Materials Florida, LLC v. EPB Enterprises*, 2012 WL 831610, *3 (M.D. Fla. 2012), citing *Shreve Land Co., In c. v. J & D Fin. Corp.*, 421 So.2d 722, 724 (Fla. App. 1982). The Court must consider all terms of the Employment Agreement in connection with this Motion to Dismiss, not just the portions that QLRS selectively presents to the Court.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hatcher v. DeSoto Cty. School Board*, ___ F.3d ___, 2013 WL 1395810 (M.D. Fla. 4/5/13) (citing Rule 10(c)).[4]

Section 5 of the Employment Agreement provides for "for cause" termination of Mr. Mobley under Section 5.1(b), and or "without cause" termination under Section 5.1(c).  Based on

---

[4] While Fed. R. Civ. P. 9(c) states that "it suffices to allege generally that all conditions precedent have occurred or been performed," that Rule also states that a party may deny with particularity that a condition precedent has been satisfied.  QLRH's general assertion that all conditions precedent have been satisfied (Complaint, para. 16) is refuted by Sec. 5.1 of the Employment Agreement it attached to the Complaint:  it is undisputed that QLRH failed to satisfy its written contractual obligation under Sec. 5.1; in any event, QLRH does not allege that it did.

the nature of the allegations QLRH has filed against Mr. Mobley, it is clear that QLRH is proceeding under the "for cause" section of the Employment Agreement but, instead of providing notice and right to cure it, is seeking adjudication from this Court that would justify "for cause" termination.

QLRH has jumped the gun, however.   The "for cause" termination under the Employment Agreement, as set forth in Section 5.1.(b)(iv), anticipates termination only under the following situation:

> "[T]he failure by the Executive [Mr. Mobley] to discharge his duties, responsibilities, and obligations to the Company, including under this Agreement or the failure to follow the directives of the CEO or Board of Managers or officer(s) to which the Executive reports **and the failure of the Executive to cure any such failure within thirty (30) days after receipt of written notice from the Company** [QLRH]...."[5]

This provision is, of course, binding on QLRH; the Employment Agreement also contains an "entire agreement clause" (at Section 6.3) and it cannot be modified except by a writing executed by the contract parties (Section 6.2).

It is undisputed that QLRH has <u>not</u> provided the required written day 30 day cure notice to Mr. Mobley.   It is also undisputed that QLRH has <u>not</u> sought (let alone obtained) an amendment to the Employment Agreement that would relieve QLRH of this iron-clad condition precedent.   QLRH has elected to sue Mr. Mobley on the Employment Agreement (rather than on its underlying acquisition of QLS and QLRS that led to the Employment Agreement), and the Court can not allow QLRH to selectively seek enforcement of the Employment Agreement's other provisions, while simultaneously ignoring the 30-day notice/cure period it promised to honor in Section 5.1. *See Essex Ins. Co. v. McFadden*, 2010 WL 2246293, * (E.D. Tex. 2010)

---

[5] Emphasis added.  Required notices under the Employment Agreement must be provided in writing (Section 6.4).

("Courts will not rewrite the contract" where the language is unambiguous, citing Texas Supreme Court authorities); *see also, Serenity Lake Condo. Ass'n v. Scottsdale Ins. Co.*, 2012 WL 5383053 (S.D. Fla. 2012), *1 ("Parties to a contract are bound by its unambiguous terms [and where] terms are clear and unambiguous, a court may not rewrite the contract.")[6]

QLRH had an iron-clad obligation, under Section 5 of the Employment Agreement, not only to give Mr. Mobley written notice of what he had specifically he has done wrong, but to provide him with a reasonable opportunity to "cure" such wrongdoing. That never happened. Instead, QLRH with this lawsuit seeks to ignore and bypass its written promise. Its failure to provide the required cure notice violates a mandatory contractual condition precedent, which now bars this litigation.

Counts I (Breach of Contract) and II (Breach of Fiduciary Duty) of QLRH's Complaint are both tainted by the fatal deficiency of QLRH's failure to abide by Section 5.1 as both are inextricably intertwined with allegations about Mr. Mobley's unsatisfactory service as President under the Employment Agreement. Counts I and II must therefore be dismissed, based on QLRH's pre-suit failure to abide by Section 5.1.

## II.    COUNT III MUST ALSO BE DISMISSED.

QLRH's Count III for "Fraud" fails for two discrete reasons: 1) any allegations that Mr. Mobley made financial misrepresentations leading up to the December 31, 2012 Purchase Agreement to not support a cause of action under his December 31, 2012 Employment Agreement and his post-closing conduct under that separate document; and 2) QLRH has failed to plead fraud with the "particularity" required by Fed. R. Civ. P. 9(b).

---

[6] Para. 6.6 of the Employment Agreement calls for application of Texas law, while Para. 10.11 of the Purchase Agreement calls for application of Florida law. As these authorities illustrate, however, this inconsistency is irrelevant: the maxim that courts cannot rewrite contracts for the benefit of one party is the same in both jurisdictions.

A.     **QLRH cannot sue Mr. Mobley for any pre-December 31, 2012 representations.**

QLRH's "Fraud" count alleges that Mr. Mobley "knowingly and intentionally misrepresented the revenue and earnings of QLS and QLRS" (para. 34) and that he intended those "false statements and misrepresentations to induce QLRH to enter into the Employment Agreement."

Count III does not appear to be based on Mr. Mobley's Employment Agreement at all: instead, it is a miscast claim for fraud in the inducement, contending that Mr. Mobley steered QLRH into the threshold purchase of QLS and QLRS, absent which there would not even have been an Employment Agreement  This is not a "chicken or the egg" conundrum:  without QLRH's closing on QLS and QLRS, QLRH would not have employed Mr. Mobley as its President, and the Employment Agreement would not have carved out Mr. Mobley's continued ability to operate the Mobley Affiliates as exceptions to Mr. Mobley's non-compete provisions. Both events, absent the closing, would have been unnecessary and/or moot, as a matter of logic.

The Employment Agreement is dated December 31, 2012, and it has a three-year duration into the future (see para. 1.1).  In it, Mr. Mobley makes absolutely no financial representation of any type whatsoever to QLRH -- and QLRH does not allege that he did.

QLRH has not sued Mr. Mobley over the closing itself, and its allegations that Mr. Mobley made financial misrepresentations *prior to* execution of the December 31, 2012 Employment Agreement are insufficient as a matter of law to set forth a cause of action based on Mr. Mobley's conduct under the Employment Agreement.

Of course, even if QLRH had sued Mr. Mobley over representations made prior to the December 31, 2012 closing, those allegations would be subject to Sec. 10.06 of the Purchase Agreement, which unambiguously states that it supersedes all "prior and contemporaneous

understandings and agreements, both written and oral, with respect to such subject matter," which is nothing other than QLRH's acquisition of QLS and QLRS.   Mr. Mobley would be entitled to summary judgment on his behalf even of those allegations had been made (and they were not), for the reasons explained more fully in Section IV of this Memorandum.

**B.       QLRH has failed to plead fraud with particularity.**

Fed. R. Civ. P. 9(b) requires a party to plead fraud not just generally, but with "particularity":

> In alleging fraud or mistake, a party must state **with particularity** the circumstances constituting fraud or mistake.

This jurisdiction has interpreted that Federal Rule to impose a four-part requirement. Specifically, Rule 9(b)'s "with particularity" pleading requirement is only satisfied when the complainant sets forth:

> (1) Precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) The time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3) The content of such statements and the manner in which they misled the plaintiff, and
>
> (4) What the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230,1237 (11th Cir. 2008) (affirming district court's granting of a motion to dismiss based on the inadequacy of fraud allegations); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (same four elements cited when affirming a summary judgment for the defendants).

QLRH's Complaint completely and utterly fails to meet these four requirements.   In fact, all that QLRH does is accuse Mr. Mobley of "fraud" in the most general sense, without

specifying "precisely" what false statements were made, the time and place they were made, or their content.

In paragraph 31 of the Complaint, QLRH contents itself with alleging: "Mobley has knowingly made a number of false statements to QLRH concerning material facts." What details does QLRH then give? Only this, at para. 32: "Specifically, Mobley represented that the revenue and earnings of the QLRH-purchased entities were in the mid eight figures, and that QLS and QLRS performed the majority of the revenue-generating wellsite services." That is it: QLRH has no provided no further detail as to Mr. Mobley's alleged "fraud."

While perhaps outside the scope of this Motion to Dismiss, the Court may reasonably (and correctly) assume that QLRH's December 31, 2012 acquisition of non-parties QLS and QLRS was preceded by a full opportunity for due diligence; financial disclosures were provided, and vetted by QLRH's accountants; and hundreds if not thousands of pages of closing documents were exchanged. Why then is QLRH not suing on the actual underlying transaction itself? Because all of those documents would now be before the Court, and would show that Mr. Mobley committed no fraud.

It should also not surprise the Court that a number of Florida district judges, following the Eleventh Circuit's lead on the stringent application of Rule 9(b), have summarily dismissed complaints containing inadequately pled fraud allegations. Those cases include, but are not limited to, *U.S. v. Gov't Business Services Group*, 2005 WL 1572281 (M.D. Fla. 2005) and *Hopper v. Solvay Pharmaceuticals, Inc.*, 290 F.Supp.2d 1352 (M.D. Fla. 2008).

In *U.S. v. Gov't Business Services*, which arose out of a contract between the parties, the district court held that even though a relaxed standard may be applied to "widespread fraud," a complaint still fails where a time frame and the identity of individuals making allegedly

fraudulent statements is provided, yet "the failure to adequately plead the contents of the alleged fraudulent representations was fatal to the allegations even in light of the relaxed standard." 2005 WL 1572281 at *4. The motion to dismiss was granted, based on this lack of specificity.

Here, QLRH is not entitled to a relaxed standard based on "widespread fraud," but even if it was, its failure to allege fraud with specificity is inexcusable, particularly given the very short time period involved: the period immediately preceding the December 31, 2012 closing, up to the April 8, 2012 filing of the complaint.

In *Hopper*, the district court refused the plaintiff's invitation to speculate or presume that fraud must have occurred without allegations of actual specific facts. In fact, the *Hopper* court justified its dismissal by citing the Eleventh Circuit's prior decision in *Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002), a case where the qui tam relator "did not include a copy of a single actual bill or claim, he did not identify the amounts of any charges or dates of claims, and he did not provide a single completed reimbursement form." 590 F.Supp.2d at 1360, citing *Clausen* at 1313. QLRH has similarly failed to support any of its fraud allegations with a single bill, claim, invoice, charge, or date tying Mr. Mobley to any "fraud" against it.

**III.    QLRH'S ALLEGATIONS ABOUT MR. MOBLEY'S POST-CLOSING OPERATION OF THE MOBLEY AFFILIATES FAIL TO STATE ANY CAUSE OF ACTION:   BOTH THE EMPLOYMENT AGREEMENT AND THE PURCHASE AGREEMENT CONTAIN AN EXPRESS CARVE-OUT.**

A common thread running throughout all of QLRH's three counts is the allegation that Mr. Mobley has somehow improperly "diverted a significant amount of QLRH business to the Mobley Affiliates in violation of his Employment Agreement and in breach of the fiduciary duty Mr. Mobley owed QLRH under that Employment Agreement. Complaint para. 15 (general allegation subsequently incorporated into all counts); para. 19-21 (Count I); para. 27 (Count II); para. 33 and 36 (Count III).

The Court need not even reach the issue of QLRH's repetitive "Mobley Affiliate" allegations because Counts I, II and III should be dismissed in their entirety based on the reasons set forth in Sections I and II of this Legal Memorandum:  namely, QLRH's failure to satisfy the mandatory condition precedent contained in Section 5.1 of the Employment Agreement, and as to Count III, even if QLRH had alleged "fraud" in Count III with sufficient particularity (but it has not), allegations about pre-closing conduct cannot support a cause of action based on a post-closing Employment Agreement.

Section 1.2(c) of the Employment Agreement provides, in relevant part:

> Notwithstanding any provision in this Section to the contrary, the Executive [Mr. Mobley] shall be entitled to continue to manage and operate [the "Mobley Affiliates"] in the same manner as such entities are currently managed and operated by the Executive as of the Effective Date and so long as such management and operation do not materially interfere with the Executive's fulfillment of his obligations and duties under this Agreement.

Section 5.07(f) of the Purchase Agreement similarly provides, in relevant part, that notwithstanding any other non-competition provisions in the Purchase Agreement to the contrary:

> [T]he conduct of the business of [the "Mobley Affiliates"] shall not be considered to be a violation of this Section to the extent the business of the Mobley Affiliates is conducted in the same manner and to the same extent as the business of the Mobley Affiliates was conducted as of the Closing Date.

The "Closing Date" defined in the Purchase Agreement (at sec. 2.05) is, in effect, the same date: December 31, 2012.

All of QLRH's "Mobley Affiliate" allegations fail to support a cause of action in any count.  Both Sec. 1.2(c) of the Employment Agreement, and Sec. 5.07(f) of the Purchase Agreement prohibit it.  Both provisions expressly provide for the continued operation of these

entities in the same manner and to the same extent Mobley Affiliate business was conducted prior to December 31, 2012. QLRH has failed to allege that Mr. Mobley's post-closing conduct in operating and managing the Mobley Affiliates was in any way different to his pre-closing conduct. Mr. Mobley's consistent operation of those entities post-closing is protected by contracts that QLRH drafted, and to which it agreed.

Conspicuously missing from QLRH's Complaint is any allegation whatsoever that Mr. Mobley's post-December 31, 2012 operation and management of the Mobley Affiliates differed in any material way from his pre-closing operation and management of those same businesses. QLRH cannot claim indignation or surprise, let alone sue Mr. Mobley; QLRH expressly agreed that Mr. Mobley's post-closing continued operation and management of the Mobley Affiliates would be protected by Section 1.2(c) of the Employment Agreement, just as it was in Purchase Agreement Sec. 5.07(c). QLRH may not like this result, but this is the deal it struck in writing with Mr. Mobley, and the Court must enforce it.[7]

## IV.   AS AN ALTERNATIVE TO DISMISSAL, THE COURT SHOULD CONVERT MR. MOBLEY'S MOTION INTO ONE FOR SUMMARY JUDGMENT, AND GRANT JUDGMENT IN HIS FAVOR AS TO ALL COUNTS.

Fed. R. Civ. P. 12(d) provides for a motion to dismiss to be treated as one for summary judgment when matters outside the pleadings are presented to the Court:

> If, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

---

[7] Even if QLRH's allegations about the Mobley Affiliates were not precluded by the contracts, QLRH has provided absolutely no detail as to how Mr. Mobley's continued operation and management of the Mobley Affiliates was supposedly improper, which would require, at a very minimum, a more definite statement under Fed. R. Civ. P. 12(e).

Page 16

Fed. R. Civ. P. 56(a) provides in turn that summary judgment shall be granted "if the movant

shows that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." If the Court does not dismiss all of QLRH's claims against Mr.

Mobley outright for the reasons explained in Sections I – III above, the Court should treat this

Motion as one for summary judgment, and rule in his favor, because there is no genuine issue as

to any material fact raised by the Complaint.

A.     **QLRH was furnished with numerous financial disclosures prior to the December 31, 2012 closing.**

Sec. 3.06 of the Purchase Agreement shows that, in connection with its December 31,

2012 acquisition of QLS and QLRS (defined in the preamble as "Targets"), QLRH was provided

with complete disclosure schedules, consisting of the following:

- Audited financial statements consisting of the balance sheet of the such Target as of December 31st in each of the years 2009, 2010 and 2011 and the related statements of income and retained earnings, equityholders' equity and cash flow for the years then ended (defined as "Audited Financial Statements"); and

- Unaudited financial statements consisting of the balance sheet of each of the Targets as of August 31, 2012 and the related statements of income and retained earnings, equityholders' equity and cash flow for the nine-month period then ended (defined as "Interim Financial Statements), prepared in accordance with GAAP.[8]

Sec. 3.07 of the Purchase Agreement states that each of the Targets has no undisclosed liabilities.

Finally, in Sec. 10.06, the parties agreed that the Purchase Agreement reflected their entire and

complete understanding and that it superseded "all prior and contemporaneous understandings

and agreements, both written and oral, with respect to [the closing]. If QRLH truly believed that

there had been any fraud or other misdealing by Mr. Mobley leading up to the December 31,

2012 Purchase Agreement that it freely and voluntarily signed, QLRH should have filed a fraud

---

[8] General Accepted Accounting Principles.

in the inducement claim relating to that Purchase Agreement. Its failure to do so speaks volumes

and based on these numerous pre-closing financial disclosures, summary judgment should be

granted against it.

**B.    QLRH agreed at closing that the Mobley Affiliates were an express recognized exception to any non-competition or non-solicitation provisions.**

Mr. Mobley has already cited the text of the relevant provisions of the Employment

Agreement (Sec. 1.2(c) and the Purchase Agreement (Sec. 5.07(f)) whereby QLRH expressly

agreed to the continued post-closing operation of the Mobley Affiliates in the same manner they

were operated pre-closing, notwithstanding any other non-competition or non-solicitation

provisions in those documents.   QLRH has failed to show that Mr. Mobley's post-closing

involvement with any Mobley Affiliate differed in any way from his pre-closing actions, and

summary judgment is appropriate for him as well on any allegations that he "diverted" QLRH

business.

**C.    Any direct action by QLRH against Mr. Mobley is barred by Sec. 8.05(c) of the Purchase Agreement.**

QLRH's lawsuit seeks to make a direct claim against Mr. Mobley, who was also a party

to the Purchase Agreement, but in order to make such a claim, a party "shall" give "reasonably

prompt written notice thereof … no later than 30 days after the Indemnified Party becomes

aware of such Direct Claim."   This requirement is contained in Sec. 8.05(c) of the Purchase

Agreement.  The format for written notices, including notices to Mr. Mobley, is then specified in

Sec. 10.02.

It is undisputed that QLRH never gave Mr. Mobley the required written notice of its

intention to assert a direct claim against him.  QLRH never followed up on its April 6, 2012

Administrative Leave Letter, which in any event is wildly inconsistent with its subsequent

representation to all employees that Mr. Mobley had "resigned" and "retired". *See* Exh. 2; 3. Even if QLRH takes the position that its Administrative Leave Letter somehow satisfied the Purchase Agreement's 30-day notice requirement, it remains undisputed that QLRH never gave Mr. Mobley the separate 30-day notice and cure opportunity mandated by the Employment Agreement – the document on which QLRH's suit is actually based.

QLRH cannot backtrack from its actions now, even though it must realize, with the wisdom of hindsight, that since QLRH gave all employees notice of its litigation with Mr. Mobley back on April 12, 2013 (*see* Exh. 4), 30 days from its knowledge of its claims has long since expired, without the mandatory written notice required under Sec. 8.05(c) of the Purchase Agreement.

Section 8.05(c)'s requirement has not been eliminated, nor has it been waived by Mr. Mobley. On the contrary: under Sec. 10.09 of the Purchase Agreement, only written amendments to it are effective: and QLRH has no argument that any such written amendment or waiver agreed to by Mr. Mobley exists. Dismissal or summary judgment is required in Mr. Mobley's favor as to any and all claims; the fatal defects set forth above cannot be cured, even with artful repleading.

## CONCLUSION

All of QLRH's claims against Mr. Mobley fail as a matter of law, and all must be dismissed. Even if the Court considers this situation under the summary judgment standard, the terms of the Employment Agreement attached to the Complaint, combined with the terms contained in the Purchase Agreement attached to Mr. Mobley's Motion, mandate summary judgment for Mr. Mobley. Either way, QLRH's lawsuit fails in its entirety. The Court should either dismiss all claims with prejudice, or grant summary judgment to Mr. Mobley.

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2013, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will automatically send a notice of electronic filing to

all persons registered for ECF as of that date.[9]

Charles M. Harris (FL Bar # 967459)
cmharris@trenam.com
Stephanie S. Leuthauser (FL Bar # 44981)
sleuthauser@trenam.com
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, PA
101 E. Kennedy Blvd., Ste. 2700
Tampa, FL 33602
Ph: (813) 223-7474 and Fx: (813) 229-6553
*Attorneys for Plaintiffs*

/s/ Guy M. Burns
GUY M. BURNS (FL Bar #0160901)
Email 1: guyb@jpfirm.com
Email 2: laurah@jpfirm.com
JONATHAN S. COLEMAN (FL Bar #0797480)
Email 1: jonathanc@jpfirm.com
**JOHNSON, POPE, BOKOR,
  RUPPEL & BURNS, LLP**
403 East Madison Street, Suite 400
Tampa, Florida 33602-4614
Ph: (813) 225-2500 / Fx: (813) 223-7118
*Attorneys for Defendant David M. Mobley*

*#1448039.v2*

---

[9] As this Motion seeks dismissal and/or summary judgment, no certification of consultation with counsel is required under Middle District Local Rule 3.01(g).